*Filed with C.S.O. on December 28, 2005. Cleared for public filing on December 29, 2005.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Saleh Ali Abdullah Al Salami,  )
    Detainee,  )
    Guantanamo Bay Naval Station  )
    Guantanamo Bay, Cuba;  )
      )
Ali Abdullah Al Salami,  )
    as Next Friend of Saleh Ali Abdullah  )
    Al Salami;  )  **FIRST AMENDED PETITION**
      )  **OF HABEAS CORPUS**
Abdullah Al Sali Al Asoriya,  )
    Detainee,  )  **Case No. 1:05CV02452**
    Guantanamo Bay Naval Station  )
    Guantanamo Bay, Cuba;  )
      )
Omar Rajib Amin and Fayiz Al Kandari  )
    as Next Friends of Abdullah Al  )
    Sali Al Asoriya  )
      )
*Petitioners/Plaintiffs,*  )
      )
    v.  )
      )
GEORGE W. BUSH,  )
    President of the United States  )
    The White House  )
    1600 Pennsylvania Ave., N.W.  )
    Washington, D.C. 20500;  )
      )
DONALD RUMSFELD,  )
    Secretary, United States  )
    Department of Defense  )
    1000 Defense Pentagon  )
    Washington, D.C. 20301-1000;  )
      )
ARMY BRIG. GEN. JAY HOOD,  )
    Commander, Joint Task Force - GTMO  )
    JTF-GTMO  )
    APO AE 09360; and  )
      )
ARMY COL. MIKE BUMGARNER,  )
    Commander, Joint Detention  )
      Operations Group - JTF-GTMO,  )
    JTF-GTMO  )
    APO AE 09360,  )
      )
*Respondents/Defendants.*  )

**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Petitioners Saleh Ali Abdullah Al Salami ("Al Salami") and Abdullah Al Sali Al Asoriya ("Al Asoriya") seek the Great Writ. A citizen of Yemen, Petitioner Al Salami acts on his own behalf and through his Next Friend, Ali Abdullah Al Salami, his father. A citizen of Saudi Arabia, Petitioner Al Asoriya acts on his own behalf and through his Next Friends, Omar Rajib Amin and Fayiz Al Kandari. Both Al Salami and Al Asoriya are civilians wrongly classified as "enemy combatants" by the President of the United States, and are being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which they might challenge their detention. Petitioners are being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioners or to establish in this Court the lawful basis for Petitioners' detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioners at Guantánamo.

## I.
## JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3), and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain this Petition under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction. Finally, this Court is authorized issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.    Petitioner Al Salami is a Yemeni citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control. *See* Declaration of Robert H. Knowles, attached hereto as Exhibit A.

4.    Petitioner Ali Abdullah Al Salami is Petitioner Al Salami's father. *Id.* at ¶ 1. He is a Yemeni citizen. *Id.* at ¶ 4. Because his son has been denied access to legal counsel and to the courts of the United States, Ali Abdullah Al Salami acts as his Next Friend. *Id.* at ¶ 7.

5.    Petitioner Al Asoriya is a citizen of Saudi Arabia and is presently incarcerated at Guantanamo and held in Respondents' unlawful custody and control. *See* Declaration of Neil H. Koslowe, attached hereto as Exhibit B.

6.    Petitioners Omar Rajib Amin and Fayiz Al Kandari are detainees at Guantanamo Bay Naval Station and are represented by counsel at Shearman & Sterling LLP. *Id.* Both are citizens of Kuwait. *Id.* Because Al Asoriya has been denied access to legal counsel and to the courts of the United States, Omar Rajib Amin and Fayiz Al Kandari act as his Next Friends. *Id.*

7.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Al Salami and Petitioner Al Asoriya are being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner Al Salami's and Petitioner Al Asoriya's unlawful detention and is sued in his official capacity.

8.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al Salami and Petitioner Al Asoriya. He is sued in his official capacity.

9.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory

responsibility for Petitioner Al Salami and Petitioner Al Asoriya and is sued in his official capacity.

10.     Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al Salami is presently held. He is the immediate custodian responsible for Petitioner Al Salami's and Petitioner Al Asoriya's detention and is sued in his official capacity.

11.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

12.     Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya are not, nor have ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind under any definition adopted by the government in any civil or military proceeding.

13.     Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya are not, nor have ever been, "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 542 U.S. 507, 516, 124 S. Ct. 2633, 2639 (plurality) (2004).

14.     Petitioner Al Salami and Petitioner Al Asoriya seek to enforce their rights to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that they are either "enemy combatants" as defined by the United States Supreme Court in *Hamdi* or "enemy combatants" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

15.     Upon information and belief, at the time of their seizure and detention, Petitioner Al Salami and Petitioner Al Asoriya were not members of the Taliban Government's armed forces or Al Qaeda.  They did not cause or attempt to cause any harm to American personnel or property prior to their detention.  They had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.  They remain incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

16.     Petitioner Al Salami and Petitioner Al Asoriya have not been afforded any procedures that would satisfy their rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

17.     Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya desire to pursue in the courts of the United States every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

18.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

19.    Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya did not participate in the armed conflict at any point in time.  Therefore, they are not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

20.    Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya are not, and have never been, members of Al Qaeda or any other terrorist group.  Prior to their detention, they did not commit any violent act against any American person or espouse any violent act against any American person or property.  They had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  They are not properly subject to the detention order issued by President Bush.  As they did not participate in the armed conflict at any point in time, they are not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

## The Executive Order

21.     On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

    i.      is or was a member of the organization known as al Qaeda;

    ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

22.     The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

23.     The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Al Salami and Petitioner Al Asoriya was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Al Salami and Petitioner Al Asoriya at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Al Salami and Petitioner Al Asoriya, was, and is, being made by Respondents in the United States and in this judicial district.

24.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Al Salami and Petitioner Al Asoriya are subject to the Executive Order.

25.     Petitioner Al Salami and Petitioner Al Asoriya  are not properly subject to the Executive Order.

26.     Petitioners have not been, and are not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war.  Petitioners were not arrested or detained by the United States in the course of an armed conflict.  Petitioner Al Salami and Petitioner Al Asoriya are not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

**Guantánamo Bay Naval Station**

27.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

28.   Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. 466, 483-484 124 S. Ct. 2686, 2698 (June 28, 2004).

29.   By at least September 2004, the precise date being unknown to counsel, but known to Respondents, the United States military transferred Petitioner Al Salami and Petitioner Al Asoriya to Guantánamo, where they have been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantanamo

30.   Since gaining control of Petitioner Al Salami and Petitioner Al Asoriya, the United States military has held them virtually *incommunicado*.

31.   Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya have been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though they have not been charged with an offense and have not been notified of any pending or contemplated charges. They have not appeared before a lawful military or civilian tribunal, and have not been provided access to counsel or the means to contact and secure counsel. They have not been adequately informed of their rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Al Salami and Petitioner Al Asoriya should not be informed of these rights. As a result, Petitioner Al Salami and Petitioner Al Asoriya lack any ability to protect or to vindicate their rights under domestic and international law.

32.  Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya have been forced to provide involuntary statements to Respondents' agents at Guantanamo.

33.  Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya have been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*:

   a.  Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005);

   b.  Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005);

   c.  United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005;

   d.  International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004;

   e.  International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004;

   f.  Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also*

   g.  Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

34.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

35.    In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

36.    Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See e.g.*:

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

a. Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18

b. Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005);

c. *Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also*

d. Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11;

e. Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1;

f. Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1;

g. Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1;

h. Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

37.    As well, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees.  Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005; *and see* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 89-90, Ch. 12, AMR 51/063/2005 (13 May 2005).

38.   In fact, some of the well-publicized and egregious interrogation techniques used in the Abu Ghraib torture debacle —such as aggressive use of dogs, sexual humiliation, stress positions and sense deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Wash. Post*, July 14, 2005 at A1.

39.   The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees.  *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

40.   As well, military defense lawyers have been instructed to materially limit their representation disfavorably to their detainee clients in violation of due process. *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005 at A25 (Late Ed.).

41.   Respondents, acting individually or through their agents, have stated that limitations, which normally apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense, *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. *See e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19,

2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

42. In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held [...] 'We have to look at Camp X-ray as a work in progress [...]' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

43. According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24, 2005).

44. Counsel for Respondents have also consistently maintained that the United States may hold the detained Petitioners under their current conditions indefinitely. *In re*

*Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

45. In fact, the Government has failed to release detainees even after they have been found to be non-enemy combatants by the CSRTs. *See* Robin Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); *and* Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005 at C4.

46. The Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

### Rendition

47. During interrogations, detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

48.    The U.S. government's practice of extraordinary rendition has been well documented by

American and international news organizations, including, *inter alia*, the *Washington*

*Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").

According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source.  The suspects have been taken
> to countries . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects,"

*Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for

Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'

depend on arrangements between the United States and other countries, such as Egypt . .

., that agree to have local security services hold certain suspects in their facilities for

interrogation by CIA and foreign liaison officers.").

49.    In fact, the Government has recently announced its intention to render many Guantanamo

detainees to countries which have a poor record of respecting human rights and which

engage in torture. *See e.g.*, Matthew Waxman, "Beyond Guantanamo," *Wash. Times*,

Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of

Detainees; Administration Close to Reaching Agreements With 10 Muslim

Governments," *Wash. Times*, August 9, 2005, at A13; Neil Lewis, "Guantanamo

Detention Site Is Being Transformed, U.S. Says," *NY Times*, August 6, 2005, at A8 (Late

Ed.); Paul Richter, "U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA*

*Times*, Aug. 5, 2005 at A18.

50. Moreover, upon belief and information, the Government is conditioning such rendering of detainees to their home countries on the requirement that the home country imprison the detainee, without regard to the detainee's individual factual or legal situation. *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post*, August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005 (available from LEXIS, MWP90 file) ("The US authorities declared few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail").

51. Petitioner Al Salami has a legitimate fear of imminent harm if returned to Yemen. In February 2005, the United States State Department concluded that Yemeni "[s]ecurity forces arbitrarily continued to arrest, detain, and torture persons. In many cases, the Government failed to hold members of the security forces accountable for abuses…" Dep't of State, Country Report on Human Rights Practices, 2004, Yemen, http://www.state.gov/g/drl/rls/hrrpt/2004/41736.htm.Moreover, "[t]here were reports that the CID routinely used torture in order to obtain confessions." Id.

52. Petitioner Al Asoriya has a legitimate fear of imminent harm if returned to Saudi Arabia. In August 2005, the United States State Department concluded that "the United States remains concerned about human rights conditions in Saudi Arabia." Dep't of State, Bureau of Near Eastern Affairs August 2005, Background Note: Saudi Arabia, at http://www.state.gov/r/pa/ei/bng/3584.htm. In a report released on February 28, 2005, the U.S. State Department found that "Security forces continued to abuse detainees and prisoners, arbitrarily arrest, and hold persons in incommunicado detention . . .

[A]uthorities reportedly at times abuse detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of beatings with sticks and suspension from bars by handcuffs. There were allegations that these practices were used to force confessions from prisoners." Dep't of State, Country Report on Human Rights Practices, Saudi Arabia, 2004, *http://www.state.gov/g/drl/ rls/hrrpt/2004/41731.htm*, § 1(c).

53.    Upon information and belief, Petitioner Al Salami and Petitioner Al Asoriya are at risk of being rendered, expelled or returned without lawful procedures to countries that engage in torture during interrogations and incarceration.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

54.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

55.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States. President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Al Salami and Petitioner Al Asoriya the process afforded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth

Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

56.    To the extent that Petitioner Al Salami's and Petitioner Al Asoriya's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

57.    To the extent that Petitioner Al Salami's and Petitioner Al Asoriya's detention is without basis in law and violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1), Petitioners' detention is unlawful.

58.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

59.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

60.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Al Salami and Petitioner Al Asoriya to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

61.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

62.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

63.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Al Salami and Petitioner Al Asoriya the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

64.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

65.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

66.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

67.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

68.    By the actions described above, Respondents have denied and continue to deny Petitioner Al Salami and Petitioner Al Asoriya the due process accorded to persons seized and detained by the United States military in times of armed conflict as established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

69.   Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

70.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.   By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Al Salami and Petitioner Al Asoriya in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Al Salami and Petitioner Al Asoriya or for other purposes. Among other abuses, Petitioner Al Salami and Petitioner Al Asoriya have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

72.   The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Al Salami and Petitioner Al Asoriya.

74.    Petitioner Al Salami and Petitioner Al Asoriya were forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

75.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Al Salami and Petitioner Al Asoriya constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

77.    As a result of Respondents' unlawful conduct, Petitioner Al Salami and Petitioner Al Asoriya have been and are forced to suffer severe physical and psychological abuse and agony, and are therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

78.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Al Salami and Petitioner Al Asoriya, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical or moral resistance.

80.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

81.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Al Salami and Petitioner Al Asoriya.

82.    Petitioner Al Salami and Petitioner Al Asoriya were forced to suffer severe physical and psychological abuse and agony and are entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

<u>EIGHTH CLAIM FOR RELIEF</u>
<u>(ALIEN TORT STATUTE -</u>
<u>ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)</u>

83.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

84.    The acts described herein constitute arbitrary arrest and detention of Petitioner Al Salami and Petitioner Al Asoriya in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

85.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Al Salami and Petitioner Al Asoriya in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

86.    As a result of Respondents' unlawful conduct, Petitioner Al Salami and Petitioner Al Asoriya have been and are deprived of their freedom, separated from their family, and forced to suffer severe physical and mental abuse, and are therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

87.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

88.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Al Salami and Petitioner Al Asoriya in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

89.    As a result of Respondents' unlawful conduct, Petitioner Al Salami and Petitioner Al Asoriya have been, and continue to be deprived of their freedom, separated from their

family, and forced to suffer severe physical and mental abuse, and are therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

## TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION- UNLAWFUL DETENTION)

90.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

91.    Petitioner Al Salami and Petitioner Al Asoriya are not, nor have they ever been, enemy aliens, lawful or unlawful belligerents, or combatants of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 542 U.S. at 522 n.1, 124 S. Ct. 2633, 2642 n.1 (2004).

92.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al Salami and Petitioner Al Asoriya and transfer them to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Al Salami and Petitioner Al Asoriya.

93.    The military seizure and detention of Petitioner Al Salami and Petitioner Al Asoriya by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioners' detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

94.     To the extent that Respondents assert that their authority to detain Petitioner Al Salami and Petitioner Al Asoriya derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

95.     Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

96.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

97.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

98.     By arbitrarily and capriciously detaining Petitioner Al Salami and Petitioner Al Asoriya in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

99.     Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

100.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.   By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al Salami and Petitioner Al Asoriya the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

102.   Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

103.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

104.   By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al Salami and Petitioner Al Asoriya to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

105.   Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## FOURTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

106.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

107.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al Salami's and Petitioner Al Asoriya's right to consult with counsel by conditioning counsel's access to Petitioners on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al Salami's and Petitioner Al Asoriya 's attorney-client privilege, the work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

108.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

109.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

110.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioners to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioners' rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

111.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

112.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

113.    Upon information and belief, Petitioners are at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioners to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioners' rights under customary international law, which may be vindicated under the Alien Tort Statute.

114.    Accordingly, Petitioner Al Salami and Petitioner Al Asoriya are entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**V.**
**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1.    Designate Ali Abdullah Al Salami as Next Friend of Al Salami;

2.    Designate Omar Rajib Amin and Fayiz Al Kandari as Next Friend of Al Asoriya

3.    Grant the Writ of Habeas Corpus and order Respondents to release Petitioner Al Salami and Petitioner Al Asoriya from their current unlawful detention;

4.    Order that Petitioner Al Salami and Petitioner Al Asoriya be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate their rights;

5.    Order that Petitioner Al Salami and Petitioner Al Asoriya cannot be transferred to any other country without the specific written agreement of Petitioners and Petitioners' counsel while this action is pending;

6.    Order that Petitioner Al Salami and Petitioner Al Asoriya cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petitioners will be subject to torture

7.  Order Respondents to allow counsel to meet and confer with Petitioner Al Salami and Petitioner Al Asoriya, in private and unmonitored attorney-client conversations;

8.  Order Respondents to cease all interrogations of Petitioner Al Salami and Petitioner Al Asoriya, direct or indirect, while this litigation is pending;

9.  Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Al Salami and Petitioner Al Asoriya;

10. Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

11. Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Al Salami and Petitioner Al Asoriya without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of the common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

12. Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated:    December 28, 2005

Respectfully submitted,

Counsel for Petitioners:

Reginald McKnight
David L. Gunn
Frank Razzano
Shamir Patel
Reginald B. McKnight
DICKSTEIN SHAPIRO MORIN &
OSHINKSY LLP
2101 L Street, NW
Washington, District of Columbia 20037-1526
T: (202) 785-9700
F: (202) 887-0689

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## <u>CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION</u>

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing

Petitioner without compensation.

Dated:    January 3, 2006

David L. Gunn

33

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent by first-class United States mail this 28th day of December 2005, to the following persons:

| | |
|---|---|
| **Kenneth L. Wainstein**<br>U.S. ATTORNEY<br>District of Columbia District<br>Judiciary Center<br>555 4th Street, NW<br>Washington, D.C. 20530<br>**[By Hand Delivery]** | **Alberto R. Gonzales**<br>ATTORNEY GENERAL OF THE UNITED STATES<br>U.S. Department of Justice<br>Robert F. Kennedy Building<br>Tenth Street & Constitution Ave., NW<br>Room 5111<br>Washington, D.C. 20530<br>**[By Hand Delivery]** |
| **George W. Bush**<br>PRESIDENT, UNITED STATES OF AMERICA<br>The White House<br>1600 Pennsylvania Avenue, NW<br>Washington, D.C. 20301-1000 | **Donald Rumsfeld**<br>SECRETARY, U.S. DEPT. OF DEFENSE<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000 |
| **Amry Brig. Gen. J. Hood**<br>COMMANDER, JOINT TASK FORCE-GTMO<br>JTF-GTMO<br>APO AE 09360 | **Army Brig. Gen. J. Hood**<br>UNITED STATES ARMY<br>Army Pentagon<br>Washington, D.C. 20310-0200 |
| **Army Col. Bumgarner**<br>COMMANDER, JDOG<br>JTF-GTMO<br>APO AE 09360 | **Army Col. Bumgarner**<br>UNITED STATES ARMY<br>Army – Pentagon<br>Washington, D.C. 20310-0200 |
| **Terry Henry**<br>Senior Trial Attorney<br>Federal Programs Brnach<br>Civil Division – Room 7144<br>Dept. of Justice<br>20 Mass Avenue, NW<br>Washington, D.C. 20530<br>*Via electronic mail to: terry.henry@usdoj.com* | **Andrew Wilson**<br>Trial Attorney<br>Civil Division<br>Federal Programs Branch<br>20 Mass Avenue, NW<br>Washington, D.C. 20530<br>*Via electronic mail to: Andrew.warden@usdoj.gov* |

On this the 28th day of December, 2005.

David L. Gunn