IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SALAH ALI ABDULLAH AHMED ) <br> AL SALAMI, *et al.*, ) <br>     *Petitioners/Plaintiffs*, ) <br> ) <br> *v.* ) <br> ) <br> ) <br> ) <br> GEORGE W. BUSH, *et al.*, ) <br>     *Respondents/Defendants*. ) <br> ) | Civil Action No. 05-CV-2452 (PLF) <br><br> ORAL ARGUMENT REQUESTED |

## PETITIONERS' REPLY BRIEF IN SUPPORT OF MOTION FOR ENTRY OF PROTECTIVE ORDER

Petitioners Salah Ali Abdullah Ahmed Al Salami and Abdullah Al Sali Al Asoriya, acting on their own behalf and through their next friends, Ali Abdullah Al Salami, Omar Rajab Amin and Fayiz Al Kandari, and by and through their undersigned counsel, respectfully submit this reply brief in further support of their Motion for Entry of Protective Order.

Petitioners merely seek entry of the Amended Protective Order, "Protected Information" Order, and Supplemental Filing Procedures Order, previously entered by Judge Joyce Hens Green in *Ab-dah v. Bush,* No. 04-CV-1254 (HHK) (D.D.C.) (collectively the "Protective Order"), and later entered in other Guantánamo cases, to enable Petitioners to meet for the first time with their *pro bono* counsel. Contrary to Respondents' claims, Petitioners' request implicates neither the Detainee Treatment Act of 2005 (Pub. L. No. 109-148, tit. X, 119 Stat. 2680) (hereinafter the "DTA") nor any other substantive issue raised in Petitioners' habeas petition, filed (both in its original and amended forms) before the effective date of the DTA. Indeed, in another Guantánamo detainee case, *Adem v. Bush*, No. 05-0723 (D.D.C. Mar. 14, 2006), Magistrate Judge Alan Kay recently rejected Respondents' argument that the DTA eliminates Petitioners' right of access to counsel and ordered Respondents to allow counsel

access to their clients under the Protective Order over the same DTA and next friend objections made here by Respondents.[1]

While entry of the Protective Order would neither affect the ultimate disposition of Petitioners' substantive claims nor prejudice Respondents in *any* way, allowing Petitioners to meet with their lawyers would likely be the *only* way of conclusively answering Respondents' allegations of multiple representation and lack of direct authorization. Because Respondents' arguments against entry of the Protective Order are meritless, Petitioners' motion should be granted.

I.    BACKGROUND

Working with the Center for Constitutional Rights ("CCR"), counsel agreed to represent Petitioners *pro bono* in connection with Petitioners' challenge of their detention by Respondents at Guantánamo.

Petitioner Al Salami is a citizen of Yemen. Counsel first learned of Petitioner Al Salami's request for legal representation and desire to challenge his imprisonment through Mr. Robert H. Knowles, a CCR volunteer attorney. Mr. Knowles met with Petitioner Al Salami's father, Ali Abdullah Al Salami, in Yemen on June 15, 2005. At this meeting, Petitioner Al Salami's father indicated to Mr. Knowles his desire to act as next friend in legal proceedings challenging his son's detention. The CCR assigned Mr. Al Salami's case to undersigned counsel shortly thereafter.

Petitioner Al Asoriya is a citizen of Saudi Arabia. Counsel first learned of Petitioner Al Asoriya's desire for legal representation and wish to challenge his imprisonment through Neil

---

[1] *See* Mar. 14, 2006 Memorandum Opinion, *Adem v. Bush*, No. 05-0723 (D.D.C. March 14, 2006) (attached hereto as Exhibit A). As Magistrate Judge Kay stated in his Memorandum Opinion ("Kay Mem. Op."), "The issues raised by [petitioner's] motion seeking access to counsel pursuant to the Amended Protective Order do not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court." Kay Mem. Op. at 21. On April 4, 2006, Respondents filed a Motion for Stay and Reconsideration of Magistrate Judge Kay's March 21, 2006 Order in *Adem*.

Koslowe, a CCR volunteer and lawyer for the next friends named in Mr. Al Asoriya's habeas petition. As set forth fully in Mr. Koslowe's declaration (attached to Petitioners' First Amended Petition of Habeas Corpus), Mr. Koslowe initially learned of Petitioner Al Asoriya's request for legal representation during a meeting with his clients, Omar Rajab Amin and Fayiz Al Kandari. *See* Declaration of Neil H. Koslowe at ¶ 4, attached hereto as Exhibit B. During this meeting, Mr. Koslowe's clients indicated that Mr. Al Asoriya had asked them to forward to Mr. Koslowe Mr. Al Asoriya's request for legal representation to challenge his detention and to assist him in securing his release from Guantánamo. *Id*. Attorneys from Mr. Koslowe's firm explained to Mr. Amin and Mr. Al Kandari the legal concept of "next friend" with respect to representation before a court of law. *Id.* ¶ 5. Mr. Amin and Mr. Al Kandari told Mr. Koslowe that they knew Mr. Al Asoriya and understood his desire to be represented by counsel for these purposes. *Id.* Mr. Amin and Mr. Al Kandari indicated their desire to act as next friends of Mr. Al Asoriya for the purposes of filing a habeas petition challenging the lawfulness of Mr. Al Asoriya's detention. *Id.* Mr. Koslowe explained to Mr. Amin and Mr. Al Kandari that he would pass Mr. Al Asoriya's name and request to attorneys at the Center for Constitutional Rights in New York and that CCR would either represent him or find lawyers who would. *Id.* ¶ 6. Mr. Koslowe further declared that

> If this Court requires any additional information from Mr. Amin or Mr. Al Kandari with respect to Mr. Al Asoriya's direct request for legal representation or Mr. Amin's and Mr. Al Kandari's understanding of Next Friend status, their relationship to Mr. Al Asoriya, or their desire to serve as Next Friends to Mr. Al Asoriya, I will endeavor to obtain that information from my clients.

*Id.* ¶ 7.

After leaving Guantánamo, Mr. Koslowe communicated Mr. Al Asoriya's request to the Center for Constitutional Rights, which then relayed Mr. Al Asoriya's request to counsel. On

December 28, 2005, counsel, who already had agreed to represent Mr. Al Salami, filed an amended habeas petition naming both Mr. Al Salami and Mr. Al Asoriya as Petitioners.[2] Petitioners have not yet been able to communicate with their counsel and will not be able to do so until the Court has entered the Protective Order.

On January 12, 2006, CCR attorneys, co-counsel to Petitioners herein and numerous other Guantánamo habeas petitioners, and Respondents' counsel appeared before Shelly Snook, administrative clerk to Chief Judge Hogan. During this appearance, Mr. Snook reported that the District Court would not rule on any pending motions and would prefer that no additional motions be filed until the Circuit issued its decision. Mr. Snook explained, however, that Magistrate Judge Kay would still be available to rule on motions related to non-substantive issues, such as counsel access.

Petitioner's Motion is exactly the sort that the District Court contemplated could be filed and acted upon during the informal stay. Respondents' Opposition is, in contrast, precisely the kind of substantive attack on the petition that the District Court prohibited while its informal stay is pending. Respondents argue that Petitioners' motion should be denied because of the appellate proceedings concerning the DTA and because Petitioners "have not demonstrated" why Mr. Al Asoriya's petition, "brought by another detainee claiming to act as their 'next friend,' should not be dismissed for lack of proper next friend standing." See Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Protective Order ("Opp.") at 4. In making such arguments, Respondents thus intimate, without moving explicitly, that the Court should dismiss the Petition. Respondents' Opposition is an attempt to circumvent both the District Court's clear admonition against substantive motion practice during the stay and the

---

[2] Regarding Respondents' complaint that Mr. Al Asoriya's habeas petition was filed "improperly" via an amendment to Mr. Al Salami's petition (Opp. at 4), counsel respectfully submit that counsel was not, as Respondents suggest, motivated by a design to circumvent the Court's rules for assigning cases.

4

Court's equally clear directive that the informal stay not operate to deprive detainees access to counsel. Indeed, as discussed more fully *infra,* Magistrate Judge Kay's recent Memorandum Opinion in *Adem v. Bush* analyzes and rejects the same arguments made here by Respondents and orders Respondents to allow counsel access to their clients under the Protective Order. Kay Mem. Op. at 13-33.

## II. ARGUMENT

The writ of habeas corpus functions as an essential "safeguard[] [of] individual freedom against arbitrary and lawless state action." *Harris v. Nelson,* 394 U.S. 286, 290-91 (1969). As such, "the scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts." *Id.* at 291. Historically, the writ of habeas corpus has "served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr,* 533 U.S. 289, 301 (2001). The Supreme Court affirmed that the great writ's protections apply to Guantánamo detainees in *Rasul v. Bush,* 542 U.S. 466, 485 (2004), holding that "federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing." *See id.*

Petitioners move for entry of the Protective Order to gain access to counsel in order to obtain assistance in prosecuting Petitioners' pending habeas petitions and any other challenges that Petitioners may bring to their unlawful imprisonment at Guantánamo. Respondents' Opposition is nothing more than an attempt to prevent counsel access by placing before the Court substantive issues affecting the merits of this litigation on which the Court is not obligated to rule in light of the informal stay. Yet, each of Respondents' arguments has previously been rejected by Magistrate Judge Kay: "[t]he issues raised by [petitioner's] motion seeking access to

5

counsel pursuant to the Amended Protective Order *do not implicate any of the jurisdictional questions* pending in the D.C. Circuit and the Supreme Court." Kay Mem. Op. at 21 (ordering that counsel be allowed access to their clients under the Protective Order). In the same case, Judge Kay also considered and rejected Respondents' nearly identical arguments based on the next friend issue. *Id.* at 28-32.

> A. **The DTA Questions On Appeal To The D.C. Circuit Should Not Prevent Entry Of The Protective Order**

There is no reason why the D.C. Circuit's pending resolution of the jurisdictional and retroactivity questions raised by the DTA should impact Petitioners' right of access to counsel. As Magistrate Judge Kay held in *Adem,* the issues raised by Petitioners' "motion seeking access to counsel pursuant to the Amended Protective Order do not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court." *See* Kay Mem. Op. at 21. Judge Kay further observed that the Protective Order remains in effect in *Adem's* case and in each of the Guantánamo *habeas* cases in which it was entered and that counsel for other detainees continue to visit their clients according to its terms. *See id*. Respondents do not argue, for example, that the informal stay precludes client visits in cases where the Protective Order has already been entered. And Respondents continue to seek enforcement of the Protective Order in district courts in other Guantánamo cases. How, then, can Respondents argue that the informal stay renders this district court unable to enter the Protective Order in this instance?

As a practical matter, the Court of Appeals' ultimate ruling on the DTA's applicability to these proceedings would not impact Petitioners' need for or right to communicate with counsel. Even if the DTA were held to apply to these proceedings, Petitioners would still be entitled—pursuant to Section 1005 of the DTA—to challenge the validity of their detention as enemy combatants before the Court of Appeals. If, as Petitioners believe, the DTA is not

6

applicable to these proceedings, then Petitioners urgently require the access to counsel for assistance to prepare for their eventual habeas hearing before this Court.

### B. Respondents' Unsupported Claim That Petitioner Al Asoriya's Petition Is Duplicative Should Not Impede Petitioners' Access to Counsel

Respondents filed a Notice of Multiple Petitions concurrently with their Opposition, claiming, without any factual support, that Petitioner Al Asoriya is the "same individual who already has a habeas petition pending in *Alsaaei v. Bush,*" No. 05-CV-2369 (RWR). *See* Respondents' Notice of Multiple Petitions Filed by Guantánamo Day Detainee filed concurrently with Respondent's Opposition (the "Notice"). As explained more fully in Petitioner Al Asoriya's Response to Respondents' Notice (filed herewith), Respondents have provided no basis on which counsel or the Court could conclude that Respondents' claim is correct. Respondents have not moved to dismiss Petitioner Al Asoriya's petition. Nor have Respondents provided any basis upon which the Court could reasonably do so *sua sponte*. Counsel are ethically obligated to represent their client zealously. Before consenting to withdraw Mr. Al Asoriya's petition based on Respondents' unsupported assertion that duplicative petitions were filed, counsel would have to satisfy its ethical obligation with a complete and thorough investigation of the factual bases offered to support Respondents' claim of duplicate petitions. Such an investigation could be accomplished expeditiously if the Court were to enter the Protective Order, thereby allowing counsel to meet with Petitioner Al Asoriya to investigate Respondents' claims. Respondents have essentially admitted that a meeting with Petitioner is the only way in which their claims of duplicate petitions could be fully investigated by acknowledging in their Opposition that "there have already been two instances in which respondents incorrectly identified petitioners in the Guantánamo Bay detainee cases; errors which, unfortunately, were not discovered until counsel visited and interviewed these detainees at Guantánamo Bay." Opp. at 3 n.3. Petitioners agree: the only way to resolve the detainee

7

identification issue conclusively is to enter the Protective Order and allow Petitioners to meet with counsel.

### C. Respondents' Substantive Attack On The Petition Based On The Status Of Petitioner Al Asoriya's Next Friends Should Not Impede Petitioners' Access To Counsel

Respondents next argue that Petitioner Al Asoriya is not entitled to entry of the Protective Order—and is therefore implicitly denied access to counsel—because his next friends Omar Rajab Amin and Fayiz Al Kandari lack standing to bring this action. Opp. at 4. The Court can, however, still enter the Protective Order without ruling on whether Petitioner Al Asoriya's next friend authorization is valid and without in any way prejudicing Respondents' defense of this action.

The only effect of entering the Protective Order at this time would be that Petitioners would finally have access to counsel. This would swiftly resolve Respondents' next friend challenge without the need for further involvement by the Court. If Petitioner Al Asoriya's next friend authorization is valid, entry of the Protective Order would allow counsel to confirm Petitioners' manifest desire for legal representation as expressed by Mr. Al Asoriya's next friends during their meeting with Mr. Koslowe. If, however, contrary to every indication, Mr. Al Asoriya does not wish to proceed with his petition, entry of the Protective Order would allow Mr. Al Asoriya to communicate that fact unequivocally.

Whether Mr. Amin and Mr. Al Kandari executed a valid next friend authorization on behalf of Petitioner Al Asoriya is irrelevant to whether the Court should allow Mr. Al Asoriya simply to communicate with counsel. By placing the next friend issue before the Court knowing that the informal stay might act to preclude its resolution, Respondents have sought to deprive Petitioner Al Asoriya of counsel and to perpetuate his isolation. To the extent that Respondents can possibly envision a scenario in which allowing Petitioner Al Asoriya access to counsel could

affect the merits of this action, Petitioners are prepared to stipulate to entry of the Protective Order without prejudice to Respondents' right to move to dismiss for lack of next friend standing once the current informal stay has been lifted.

> D. **Respondents' Claim That Petitioner Al Asoriya's Next Friends Lack Standing To Bring This Action Is Without Merit**

Should this Court decide that it must determine the validity of Petitioner Al Asoriya's next friend authorization before entering the Protective Order, it should still grant Petitioners' Motion because Respondents' challenge of the authorization is without merit. Respondents argue that Petitioner Al Asoriya is not entitled to challenge the legality of his detention through his next friends for two reasons. First, Respondents argue that Petitioner Al Asoriya has failed to demonstrate why he cannot submit a petition on his own behalf. Opp. at 9-10. Second, Respondents argue that Al Asoriya's next friends do not have a sufficiently "significant relationship" with Mr. Al Asoriya to show that they are truly dedicated to Petitioner Al Asoriya's interests in this litigation. *Id.* at 10-14. Neither of these arguments is correct.

> 1. **Petitioner Al Asoriya's Ability to Challenge His Imprisonment on His Own Behalf or Through a Family Member Is Illusory**

Respondents contend that Petitioners may file habeas petitions on their own behalf because Respondents claim that the Department of Defense ("DoD") has notified each Guantánamo detainee of his right to file a habeas petition and has provided each detainee with the address of the District Court. Opp. at 7. Respondents also argue that DoD has taken "affirmative steps to facilitate legal representation for detainees" who have indicated a desire to challenge the legality of their detention by providing them with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation. *Id.* at 8. In addition, Respondents argue that detainees have been permitted to contact family and friends who may file habeas petitions on their behalf. *Id.*

9

As Magistrate Judge Kay's memorandum opinion in *Adem* indicates, however, "[t]he evidence suggests . . . that DoD's attempts to notify detainees of their right to challenge their detention have been marginally effective at best." Kay Mem. Op. at 14. In rejecting Respondents' arguments that Guantánamo detainees have been given a meaningful opportunity to file habeas corpus petitions directly, Magistrate Kay's opinion liberally cites the declaration of CCR attorney Gitanjali Gutierrez. For example, "[n]o U.S. personnel are available at the base to answer any detainee's questions about how to obtain a lawyer or what a *habeas* petition is." *Id.* (quoting). "Language issues appear to have compounded the confusion." *Id.* at 15. Even where the DoD's notice regarding habeas petitions was translated into Arabic, "the Arabic version was much more difficult to understand." *Id.* According to another declaration cited in Magistrate Judge Kay's opinion, "the authorities at Guantánamo have deceived the prisoners so consistently and so often that the detainees simply do not trust anything they are told by their captors." *Id.* at 16 (internal quotation marks omitted). Instead, "most detainees only trusted contacting other detainees who had actual *habeas* lawyers as a means of securing legal representation." *Id.* In fact, this is precisely the way in which Mr. Al Asoriya obtained representation by undersigned counsel—by contacting Omar Rajab Amin and Fayiz Al Kandari, two other prisoners who had an actual habeas lawyer, Mr. Koslowe, and asking them for help in obtaining representation.

Magistrate Kay's opinion further describes how the "DoD notices told detainees to write to a 'court,' whereas the detainees were 'seeking an "attorney" to help them.'" Kay Mem. Op. at 17. Additionally, Judge Kay noted that:

> Detainees have no way of knowing what kind of institution the United States District Court for the District of Columbia is and whether it is associated with the military. According to Al-Rawi, the view of most detainees that it was useless to try to write the Court has been confirmed by the fact that, as of yet, *no detainee who sent a letter to the Court has been able to meet with a lawyer*.

*Id.* at 17 (emphasis added).

In rejecting Respondents' arguments that Guantánamo prisoners have the ready ability to communicate with friends and family, Magistrate Kay's opinion cites the "wildly divergent claims" made by the *Adem* petitioner and Respondents. Kay Mem. Op. at 18, n.22. Magistrate Kay's opinion concludes by rejecting Respondents' arguments and finding that they are "without merit":

> Careful review of the pleadings and the Amended Protective Order and Revised Procedures for Counsel Access convinces this Court that Respondents' arguments are without merit. Adem, who has been detained incommunicado without charge by the United States, who does not speak English, who has no access to family or friends, has indicated to a fellow detainee who is represented by counsel that he wishes to challenge his potentially indefinite detention without charge. *Rasul* and *Al Odah* give him the right to have counsel. The Protective Order provides the mechanisms by which detainees may access the counsel to which they are entitled. Petitioner Adem's counsel have fully complied with the procedures necessary to meet with Adem. Nothing more is necessary.

*Id.* at 19-20.

Respondents' refusal to consent to entry of the Protective Order in this case has put Petitioner Al Asoriya in a position similar to that of the petitioner in *Adem.* Respondents hold Mr. Al Asoriya incommunicado, without charge, presumably indefinitely. Mr. Al Asoriya speaks only a little English. Mr. Asoriya indicated to two fellow detainees who are represented to counsel that he wishes to challenge his potentially indefinite detention without charge. Under the rules set forth in *Rasul* and *Al Odah,* Mr. Al Asoriya unquestionably has the right to counsel. Counsel have obtained security clearances and are prepared to comply with the Protective Order's requirements for meeting with Mr. Al Asoriya. Nothing more is necessary.

11

...

For these reasons, Petitioners' Motion for Entry of the Protective Order should be granted.

Dated:    April 6, 2006                    Respectfully submitted,

/s/  Frank C. Razzano_____
Frank C. Razzano (DC360173)
David L. Engelhardt (DC429886)
Johnisha Matthews (DC492478)
John C. Snodgrass (DC473864)
Reginald B. McKnight (DC493946)
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
2101 L Street N.W.
Washington, DC 20037
Tel: (202) 785-9700
Fax: (202) 887-0689

*Of Counsel:*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (NY5556)
Gitanjali S. Gutierrez (NY1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument and all attachments have been served on Respondents' by ECF and a copy of all instruments have been emailed to the following persons:

**Terry M. Henry, Esq.**
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
and

**Andrew I. Warden**
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530

On this the 6th day of April, 2006

/s/ Reginald B. McKnight_____
Reginald B. McKnight

DSMDB.2066819.6