IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALAH ALI ABDULLAH AHMED AL SALAMI, et al., | ) ) ) ) | |
| Petitioners, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-CV-2452 (PLF) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) ) | |
| Respondents. | ) ) ) | |
| MAZIN SALIH AL-HARBI | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-CV-1857 (CKK) |
| GEORGE W. BUSH, President of the United States, *et al.,* | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO
PETITIONERS' MOTION FOR PRESERVATION ORDER**

Respondents hereby respond to the motions for preservation orders filed in the above referenced cases. Because the motions filed in the above-captioned cases are substantially similar in many respects, see Petitioner's Emergency Motion for Preservation Order and Points and Authorities in Support Thereof, Al-Salmai v. Bush, No. 05-CV-2452 (PLF) (dkt no. 17) and Petitioners' Renewed Motion for Preservation Order, Al-Harbi v. Bush, No. 05-CV-1857 (CKK)

(dkt no. 22) , respondents are filing this consolidated reply to respond to arguments raised in both motions. Petitioners have failed to demonstrate the applicable prerequisites for a preservation order, and their motion should be denied.

## ARGUMENT

As an initial matter, on December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), became law. The Act, among other things, amends 28 U.S.C. § 2241 to create an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of aliens held as enemy combatants at Guantanamo Bay, Cuba. Section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review. Section 1005(e)(2), which establishes the exclusive review mechanism in the D.C. Circuit, was made expressly applicable to pending cases. Id. § 1005(h). In light of the creation of an exclusive review mechanism in the D.C. Circuit, the Court has no jurisdictional basis to order the relief requested by petitioners.

The effect of the Act was addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C. Circuit,[1] and our understanding is that it is the sense of the Court that it wishes to await anticipated guidance from the D.C. Circuit regarding the effect of the Act before deciding any pending motions.[2] In light of this, at a minimum, a stay of proceedings in

---

[1] Oral argument before the D.C. Circuit was held on March 22, 2006.

[2] In its recent decision in Hamdan v. Rumsfeld, the Supreme Court held, "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3)."

this case, including with respect to petitioners' requests for relief, is appropriate pending the resolution of the effect of the Act. Indeed, because the Act vests "exclusive" jurisdiction in the D.C. Circuit "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."). Granting the relief requested by petitioners would be an assertion of jurisdiction and authority in the case inconsistent with the Detainee Treatment Act's investment of exclusive jurisdiction in the Court of Appeals. Respondents' argument in this regard is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Thus, the relief requested by petitioners is not a matter independent of the jurisdictional question pending before the Court of Appeals, and

---

Hamdan v. Rumsfeld, 548 U.S. ---, slip op. at 18 n.14 (U.S. June 29, 2006). The Court specifically expressed no opinion as to whether the DTA would require transfer of such pending actions to the District of Columbia Circuit, highlighting the importance of waiting for guidance from the D.C. Circuit on this issue. Id.

granting that relief would constitute an assertion of authority that would seriously prejudice respondents. In any event, a preservation order is not appropriate for reasons discussed below.

Petitioners argue that a preservation order is needed under the two-prong test espoused by Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004). As explained below, however, the purposes for which petitioners' counsel seek a preservation order in this case cannot support entry of such an order. Furthermore, Pueblo of Laguna in any event does not supply the appropriate standard for entry of a preservation order, and even under that test, a preservation order is not warranted in this case.

It is clear from petitioners' motions that counsel seek preservation of evidence, but not of evidence to be used for purposes of the current litigation. As reflected in the notices recently filed by respondents, the individuals previously identified as the petitioners at issue in these cases, Saleh Ali Abdullah Al Salami (ISN 693), see Al Salami Notice (dkt. no. 16), and Mani Shaman Turki al-Habardi Al-Utaybi (ISN 588), see Al Harbi Notice (dkt. no. 21), are now deceased as a result of apparent suicide.[3] These petitions for habeas corpus, therefore, have no

---

[3] Petitioners' counsel's assertions that respondents have yet to identify the decedents in these cases, and their requests for further identification, are patently ridiculous. The deceased detainees were publicly identified by the Department of Defense the day following the suicides. See "DoD Identifies Guantanamo Detainee Suicides," American Forces Press Service, Jun. 12, 2006 (available at http://www.defenselink.mil/news/Jun2006/20060612_5387.html). Furthermore, respondents filed notices the first business day after the suicides notifying the Court of the deaths. Petitioners' counsel cannot convert their own confusion over the identity of the named petitioners in these cases – which can be attributable in some instances to the frequent multiplicity of aliases used by Guantanamo detainees or in other instances to the failure of counsel to obtain sufficient information regarding a purported petitioner prior to filing suit, see Al Harbi Notice at 1-2 (noting basis for respondents' identification of named petitioner and petitioners' counsel's later and still unresolved disputation of the identification) – into some failure on the part of respondents. Furthermore, the bodies of the deceased detainees have been repatriated and, respondents believe, provided by the home governments to the detainees' families for identification and burial. So petitioners' counsel's complaints regarding

4

ongoing viability.  Cf. McClendon v. Trigg, 79 F.3d 557 (7th Cir.1996) (citing McMann v. Ross, 396 U.S. 118 (1969) and Garvin v. Cochran, 371 U.S. 27 (1962) for the proposition that, when a prisoner dies, the established step is to dismiss his habeas corpus case as moot, and, thus, dismissing as moot a § 2254 petition due to petitioner's subsequent death).

     Accordingly, petitioners' counsel are attempting to invoke to power of this Court to enter a preservation order to support as yet unfiled lawsuits or legal claims by petitioners' survivors or to support unspecified public or other investigations.  See Al Salami Mot. at 5-6; Al-Harbi Mot. at 2.  This is not an appropriate exercise of jurisdiction, however.  Preservation orders such as discussed in Pueblo of Laguna, when available, are available in connection with the obligation of litigants "to take appropriate measures to preserve documents and information which are reasonably calculated to lead to the discovery of admissible evidence and likely to be requested during discovery."  Madden v. Wyeth,  No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003) (citing  Hester v. Bayer Corp., 206 F.R.D. 683, 685 (M.D.Ala.2001)); Wm. T. Thompson Co. v. General Nutrition Corp., 593 F.Supp. 1443, 1455 (C.D.Cal.1984).  The key to an obligation to preserve documents is that the parties are "litigants."  Once litigation is filed, persons or entities are put on reasonable notice that documents relating to that litigation must be preserved.  While petitioners are litigants in the present action, their survivors are not, nor will any proposed investigation by petitioners be used to address claims made in the pending litigation.[4]  It appears that the information sought to be preserved is not for use in this litigation,

---

identification would appear to have been overtaken by events.

    [4] Any "next friend" petitioners in these cases, see Al Salami Petition (dkt. no. 1) (father acting as next friend); Al Harbi Notice at 1 n.1 (dkt. no. 21) (another detainee apparently acting as next friend in case), are not in a position to assert claims on their own behalf in these cases

and a preservation order in that circumstance is not proper. Petitioners' motion, therefore, should be denied.

Not only is the type of preservation order sought by petitioners not proper, such an order would not be appropriate or warranted in the circumstances of this case in any event. The weight of authority is that the four requirements for issuance of an injunction – (1) irreparable injury, (2) substantial likelihood of success on the merits with respect to the requested relief, (3) lack of injury to other interested parties, and (4) furtherance of the public interest – must be satisfied before a preservation order may issue. See Battayav v. Bush, No. 05-CV-714 (RBW) (dkt no. 12) (denying request for preservation order in Guantanamo Bay Case, holding "'a motion to preserve evidence is an injunctive remedy and should only issue upon an adequate showing that equitable relief is warranted'") (quoting Madden v. Wyeth, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003)); Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc., Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42-43 (E.D. La. 1966). Other courts have used a modified, multi-factor analysis for the issuance of preservation orders. See Capricorn Power Co. v. Siemens Westinghouse Power, 220 F.R.D. 429, 433-434 (W.D. Pa. 2004) (focusing on "1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the

---

and have not done so. See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("next friend" does not become a party to action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest").

evidence sought to be preserved"). Pueblo of Laguna espouses a two-factor test – an order must be necessary and not unduly burdensome or overbroad – but that test has been criticized as lacking "adequate precision" and "sufficient depth of analysis." See Capricorn Power, 220 F.R.D. at 434 n.2.

Even under the test espoused by Pueblo of Laguna for determining when a preservation order is proper, however, a preservation order is not appropriate. Due to the "very potency" of the inherent power of a court to issue preservation orders and the fact that the Supreme Court has "cautioned 'inherent powers must be exercised with restraint and discretion,'" the Pueblo of Laguna court held that a party seeking a preservation order must demonstrate that the preservation order is both necessary and not unduly burdensome. Pueblo of Laguna 60 Fed. Cl. at 138 (citing Chambers v. NASCO, 501 U.S. 32, 44 (1991)). Petitioners have made neither showing.

First, petitioners have made no showing that a preservation order is actually necessary, that is, that absent an order a significant risk exists that evidence at issue will be destroyed. See Pueblo of Laguna 60 Fed. Cl. at 138; Al-Anazi v. Bush, 05-CV-0345 (JDB) (dkt. no. 35) ("The Court is not predisposed to assume that the government would alter or destroy records in its possession absent a court order, and is therefore inclined to require that, at the very least, a party seeking a preservation order against the government make a credible showing of a significant risk of alteration or destruction."). The types of documents sought to be protected could relate to pending or developing investigations that the government has initiated into the death of the detainees. "The U.S. Naval Criminal Investigative Service ("NCIS") has initiated an independent investigation to determine the cause and manner of death." See Sgt. Sara Wood,

"Three Guantanamo Bay Detainees Die of Apparent Suicide," *American Forces Press Service*, at pg. 1, attached hereto as Ex. A.  NCIS is the Navy's primary law enforcement, counterintelligence and criminal investigative service.  It works closely with other local, state, federal, and foreign agencies to counter and investigate the most serious crimes: terrorism, espionage, computer intrusion, homicide, rape, child abuse, arson, procurement fraud, and more.  Thus, NCIS is well experienced in gathering and retaining evidence obtained through its investigations.

The investigation at Guantanamo Bay has involved factual investigation at Guantanamo, as well as autopsies of the bodies.  Furthermore, the investigation is the subject of intense interest and scrutiny within the Department of Defense, the United States, and the international community.  Respondents would not compromise that investigation by destroying or sanctioning the destruction of documents pertinent to the investigation.  Furthermore, the ongoing detention mission of the military at Guantanamo Bay, and the concomitant need for the military to understand how the deaths occurred to prevent suicide attempts in the future, should dispel any notion that respondents would destroy documents related to that mission.[5]

---

[5] To the extent petitioners' counsel also seek preservation of materials related to the prior treatment of the detainees, such an order is unnecessary for reasons argued previously in Guantanamo detainee cases in this Court.  Namely, respondents have numerous independent reasons for ensuring the preservation of such documents.  See El-Banna v. Bush, No. 04-CV-1144 (RWR) Resp. Memo. in Opp. to Pets.' Mot. for Leave to Take Discovery and for Preserv. Order, filed January 12, 2005, at pp. 23-24 (dkt no. 111); Al-Marri v. Bush, No. 04-CV-2035 (GK) Resp. Memo. in Opp. to Pets.' Mot. for Leave to Take Discovery and for Preserv. Order (dkt no. 14); Battayav v. Bush, No. 05-CV-714 (RBW) Resp. Reply Memo. in Support of Mot. to Stay Proceedings Pending Related Appeals and for Continued Coordination (dkt no. 11).  Further, a preservation order is unnecessary because Judge Kessler has already entered an order to "preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility." Al-Marri v. Bush, No. 04-CV-2035 (GK), Order (dkt. no. 25) (Mar. 7, 2005).  See also, Al-Anazi v. Bush, 05-CV-0345

Petitioners cite to the entry of preservation orders in other cases before this Court as justification for entry of such an order in this case. See Al Salami Mot. at 6; Al-Harbi Mot. at 4. However, the order in cited did not hold that petitioners made a showing that such equitable relief was warranted; did not make findings that an order was needed or undertake an analysis of whether the requested preservation was overbroad. See Al-Marri v. Bush, No. 04-2035 (GK) (Mar. 7, 2005). The orders was entered simply on the basis that there appeared to be no harm to respondents in requiring the preservation of documents. Id. It does not reflect an appropriate analysis of the issue, even under Pueblo of Laguna.

The only support petitioners muster for their conspiracy theory that respondents have a propensity to destroy evidence is a document they claim "document[s] efforts by the military to 'cover up' evidence of the physical abuse of detainees." Al Salami Mot. at 4-5 (citing Petrs' Ex. G); Al-Harbi Mot. at 3-4 (citing Petrs' Ex. A). Petitioners also cite to a New York Times article regarding the death of two prisoners in U.S. custody. Al Salami Mot. Ex. H; Al-Harbi Mot. Ex. B. However, both exhibits relate to allegations of abuse of detainees in Iraq and Afghanistan, and do not concern the subject matter of this case, which solely involves detentions at Guantanamo. See Al Salami Mot., Ex. G and H; Al-Harbi Mot. Ex. A and B. In any event, the New York Times article hardly provides sufficient evidence of widespread document destruction necessary to justify a preservation order. The article contains a single brief, and very vague

---

(JDB) (dkt. no. 35) (denying as moot petitioner's request for a preservation order because "respondents have a preexisting duty to preserve the very information that this motion addresses [i.e., information related to alleged mistreatment of Guantanamo detainees], pursuant to court orders issued in Al-Marri, No. 04-CV-2035 (D.D.C. Mar. 7, 2005) (order), Anam v. Bush, No. 04-CV- 1194 (D.D.C. June 10, 2005) (order), and Abdah v. Bush, No. 04-CV-1254 (D.D.C. June 10, 2005) (order).").

reference that documents disappeared, not that they were intentionally destroyed by respondents, and contains no specifics on that point.  See Al Salami Mot. Ex. H, at 1; Al-Harbi Mot. Ex. B at 1.  The thrust of the article is that while the investigation got off to a slow start, it ultimately was successful in identifying various culpable parties.  Furthermore, while the Al Salami Exhibit G and Al-Harbi Exhibit A make reference to "cover-up efforts," when a "cover-up" is discussed in a report to the Director of the FBI, see Al Salami Mot., Ex. G; Al-Harbi Mot. Ex. A, it is a fairly good sign that whoever may have sought to perpetrate the "cover-up" did not get very far in that effort.  These documents provide no basis whatsoever for suspecting an impending campaign to destroy documents relating to Guantanamo, especially with respect to the wide range of documents sought to be covered in petitioners' proposed preservation order.

      Given that petitioners cannot prove a preservation order is necessary, petitioners' motion should be denied on that ground alone.  However, even if petitioners could somehow demonstrate that a preservation order is necessary, they cannot satisfy the second prong of the Pueblo of Laguna test requiring that a party seeking the preservation order demonstrate that such an order is not unduly burdensome and that the "particular steps adopted will be effective, but not overbroad . . . ."  Pueblo of Laguna 60 Fed. Cl. at 138.  Of course, as argued above, the preservation order sought by petitioners, because it relates not to ongoing habeas litigation but to support for alleged future claims by family members or unspecified investigations, would be improper and, thus, represent an undue burden.  Further, the requested preservation order by its terms suffers from significant overbreadth and may pose substantial burdens and responsibilities on respondents far exceeding what might otherwise be permissible in traditional discovery.  Petitioners ask the Court to order respondents to preserve, "all evidence relating to [petitioner's]

death, his detention, the reasons for his detention, any interrogations of him, his treatment and potential mistreatment, along with any and all other evidence sufficient to test the veracity of any official documentation of death produced by Respondents." See Al Salami Proposed Order and Al-Harbi Proposed Order.  Such an order is overbroad and potentially burdensome to the extent it goes beyond what might otherwise be permissible with respect to any discovery that might ever be appropriate in a habeas case, see Harris v. Nelson, 394 U.S. 296, 300 (1969) (discovery available in habeas cases only in narrow circumstances and upon showing of good cause). Petitioners' proposal, improperly, and without good cause, would put respondents in the position of having to take action with respect to a wide range of documents without having the opportunity to utilize the process of objection and litigation available in the discovery context to fine tune or challenge discovery requested based on, for example, overbreadth, relevance, or burden.

      Thus, petitioners' counsel cannot satisfy either prong of even the Pueblo of Laguna test; a fortiori petitioners cannot demonstrate the four requirements for issuance of an injunction with respect to document preservation.  The motion for preservation order, therefore, should be denied.

## **CONCLUSION**

      For the reasons stated, respondents respectfully request that petitioners' motion for preservation order be denied.

Dated: June 29, 2006                  Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          DOUGLAS N. LETTER
                                          Terrorism Litigation Counsel


                                            /s/ James J. Schwartz
                                          JOSEPH H. HUNT (D.C. Bar No. 431134)
                                          VINCENT M. GARVEY (D.C. Bar No. 127191)
                                          TERRY M. HENRY
                                          JAMES J. SCHWARTZ (D.C. Bar No. 468625)
                                          PREEYA M. NORONHA
                                          ROBERT J. KATERBERG
                                          NICHOLAS J. PATTERSON
                                          ANDREW I. WARDEN
                                          EDWARD H. WHITE
                                          Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave., N.W. Room 7310
                                          Washington, DC 20530
                                          Tel: (202) 616-8267
                                          Fax: (202) 616-8202

                                          Attorneys for Respondents